# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re:**<br><br>RALPH JOHN SCHEU,<br><br>**Debtor.** | **Bankruptcy Case<br>No. 04-42473** |

_____

| | |
|---|---|
| R. SAM HOPKINS, TRUSTEE,<br><br>        **Plaintiff,**<br><br>**vs.**<br><br>DONALD W. LOJEK,<br><br>        **Defendant.** | **Adv.  Proceeding<br>No.  05-8121** |

_____

| | |
|---|---|
| DONALD W. LOJEK,<br><br>        **Third-Party<br>        Plaintiff,**<br><br>**vs.**<br><br>ZHAO HUI and RALPH<br>JOHN SCHEU,<br><br>        **Third Party<br>        Defendants.** | |

_____

MEMORANDUM OF DECISION - 1

## MEMORANDUM OF DECISION
_____

**Appearances:**

>Jim Spinner, SERVICE, SPINNER & GRAY, Pocatello, Idaho, Attorney for Plaintiff R. Sam Hopkins, Pocatello, Idaho, Chapter 7 Trustee.
>
>Donald W. Lojek, Boise, Idaho, Pro Se Defendant.
>
>Ralph John Scheu, Sun Valley, Idaho, Pro Se Third- Party Defendant.

### *Introduction*

Plaintiff, R. Sam Hopkins, chapter 7 trustee, commenced this adversary proceeding against Defendant Donald W. Lojek, alleging that he received an avoidable post-bankruptcy transfer of property of the bankruptcy estate under § 549(a).[1]  Defendant denies the transfer should be avoided, but if it is, in a

---

[1] All section references are to the Bankruptcy Code, Title 11, U.S. Code, as it existed prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 108-9, 119 Stat. 23 (Apr. 20, 2005).  While this adversary proceeding was filed after the effective date of the BAPCPA, the underlying bankruptcy case was commenced on November 24, 2004, prior to the BAPCPA's effective date of October 17, 2005.  BAPCPA, 109 P.L. 8 § 1501(b)(1) ("the amendments made by this Act shall not apply with respect to *cases commenced* under title 11, United States Code, before the effective date of this Act.") (emphasis supplied); *see also*, *In re Kilroy*, ___ B.R. ___, 2006 WL 3072979, at *14 (Bankr. S.D.Tex. Oct. 30, 2006); *Kelsay v. Office of Lawyer Regulation*, 2006 U.S. Dist. LEXIS 72546, at *1-2.  All Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

MEMORANDUM OF DECISION - 2

third-party complaint, Defendant seeks to recover a judgment against the chapter 7 debtor, Ralph John Scheu and another party, Zhao Hui, in a like amount.[2]

At the conclusion of the trial, conducted on October 13, 2006, the Court took the issues under advisement. The Court has considered the evidence, testimony and arguments presented by the parties, as well as the applicable law. This Memorandum constitutes the Court's findings of fact, conclusions of law and decision. Fed. R. Bankr. P. 7052; 9014.

## *Findings of Fact*

Defendant, an attorney, and his law firm, Lojek Law Offices, Chartered ("Lojek, Chtd."), represented Scheu in a personal injury suit against another party in state court. Scheu was awarded a default judgment for $561,197.42, although he has been unable to collect it.

When Scheu failed to pay for the legal services, Lojek, Chtd. sued Scheu in state court. Prior to trial in that action, the parties settled. As agreed by the parties, on June 22, 2004, Scheu executed a promissory note which required him to pay Defendant $3,000 with interest. Ex. 1.[3] Scheu also signed a security

---

[2] Mr. Hui has not appeared in this action.

[3] Plaintiff, Defendant and Scheu each submitted several identical exhibits under different exhibit numbers or letters. Some of these exhibits were already in the Court's record. For brevity and clarity, the Court will include only one cite when referring to an exhibit.

MEMORANDUM OF DECISION - 3

agreement in which he granted Lojek, Chtd. a security interest in his 1981 Jeep to secure payment of the note. Ex. J.[4]  Scheu also gave Defendant the certificate of title to the Jeep. On July 27, 2004, a judgment in the amount of $3,000 was entered against Scheu in favor of Lojek, Chtd.. However, the judgment provided that if Scheu made the promised payments, Lojek, Chtd. could not execute on the judgment. Ex. E.

On November 23, 2004, Scheu sold the Jeep to Zhao Hui. Ex. DD. Scheu testified that he used a portion of the sale proceeds to buy food and pay living expenses. However, he also used some of the sale proceeds to purchase two cashier's checks.

The first check, dated November 23, 2004, was made payable to "DONALD W. LOJEK" in the amount of $3,075. Ex. 2. Scheu testified he went to the bank during the morning hours, obtained the cashier's check, and immediately went to the post office, where he mailed the check to the Lojek, Chtd. post office box listed on Defendant's correspondence. He sent the check to Defendant via overnight mail in a specially-designated envelope he obtained from the post office, for which he had to pay substantially more than the ordinary first-

---

[4] The Court notes that the parties to the Promissory Note are Scheu and "Donald W. Lojek," while the parties to the Security Agreement are Scheu and "Lojek Law Offices, Chtd."

MEMORANDUM OF DECISION - 4

class letter rate.[5]  Scheu testified that he intended this check to constitute payment in full of his debt for legal services, and he expected to receive a release of the lien on the Jeep so he then could convey clear title to the purchaser, Hui.

The evidence does not conclusively establish the date and time the check reached the law firm's post office box.  Scheu supposed it would have arrived the morning following the date it was mailed, but of course, this is speculation.  Because Defendant had been on vacation, and given the intervening Thanksgiving holiday, it is also unclear exactly when the check was retrieved from the post office box.  However, Defendant testified that November 29, 2004 was the first day he personally had possession of the check.  It is undisputed that on that date, Defendant endorsed the check over to Lojek, Chtd., and deposited it in the firm's bank account.  He also remitted a small amount to Scheu by return mail, because he felt Scheu had erred in calculating the interest due on the debt.

Scheu also used some of the Jeep sale proceeds to pay his bankruptcy filing fees.  He testified that later the same day he mailed the check to Defendant, he returned to the bank and obtained a second cashier's check, also dated November 23, 2004, for $209, payable to the "US BANKRUPTCY COURT

---

[5] Mr. Scheu testified that he was charged $13.95 for this special, overnight service.

MEMORANDUM OF DECISION - 5

OF ID." Ex. BB.[6] He testified that he took the check to the office of his attorney, Mr. Kraynick, and then finalized his bankruptcy petition. Late on the afternoon of that same day, November 23, 2004, Scheu mailed his completed bankruptcy petition and the check for the filing fees, also via overnight mail, to the clerk of this Court. *See*, Scheu's Deposition Transcript, Ex. 6, at 27; 34. It is undisputed that Scheu's petition and check were received by the clerk at some time the following day, November 24, 2004.[7]

### *The Pleadings*

Plaintiff was appointed to serve as trustee in Scheu's chapter 7 bankruptcy case. On November 7, 2005, Plaintiff filed an adversary complaint against Defendant seeking to recover the $3,100 payment made by Scheu to Defendant.[8] Docket No. 1. In response, Defendant denied the transfer could be

---

[6] Scheu testified that approximately 20 or 30 minutes passed between the issuance of the first and second cashier's checks.

[7] While it is clear that Scheu's petition was received by the clerk on November 24, 2004, there is no evidence in the record to establish the precise time of day that occurred.

[8] In his complaint, Plaintiff seeks to avoid the "$3,100.00" payment. However, it is undisputed that the payment was actually $3,075. It is further undisputed that, as noted above, Defendant returned $12.86 to Mr. Scheu as the amount he overpaid. While arguably, Defendant is not necessarily entitled to credit against the transfer amount for the funds returned to Scheu, in the absence of an objection by Plaintiff, and given the small amount involved, the Court will allow such a credit. Therefore, the Court deems Plaintiff's request to be to avoid the net amount transferred, $3,062.14.

MEMORANDUM OF DECISION - 6

avoided and recovered. Defendant also filed a third-party complaint against Scheu and Hui, the purchaser of the vehicle, asserting that if the transfer was avoided, then Scheu and Hui should reimburse Defendant for any amounts he must pay to Plaintiff, together with his attorney fees and expenses. Docket Nos. 5, 6.

### *Conclusions of Law and Disposition of Issues*

I.

Plaintiff contends that when Defendant negotiated the $3,075 check, Scheu's bankruptcy case had already been filed, and therefore the payment constituted a post-petition transfer which Plaintiff, as trustee, may avoid and recover from Defendant under §§ 549(a) and 550(a).[9]

Section 549(a) provides that a trustee may avoid a transfer of property of a bankruptcy estate that occurs (1) after the commencement of the bankruptcy case, and (2) that is not authorized either under the Code or by the Court. *In re Mora*, 199 F.3d 1024, 1026 (9th Cir. 1999) (holding that Trustee "must show that a transfer occurred after the filing of the bankruptcy petition and that the transfer was not authorized by either the bankruptcy court or the Code."); *Fitzgerald v. Beesley (In re Beesley)*, 92 I.B.C.R. 82, 82 (Bankr. D. Idaho 1992).

---

[9] Interestingly, Plaintiff did not state an alternative claim against Defendant to avoid the transfer as a pre-bankruptcy preference under § 547(b). As a result, the success of Plaintiff's claim against Defendant requires proof that the transfer occurred after, and not before, Scheu's bankruptcy petition was filed.

MEMORANDUM OF DECISION - 7

Defendant has not argued, nor was any evidence offered to show, that the payment of the $3,075 by Scheu was approved by the Court or otherwise authorized by any provision of the Bankruptcy Code. Therefore, the second prong of the statute is not at issue. Instead, the outcome of this contest turns on whether the subject transfer occurred before the filing of Scheu's bankruptcy petition.

The Code "grants a trustee an impressive array of powers to avoid transfers of a debtor's property." *Fitzgerald v. Bauer Pontiac-Cadillac-Buick-GMC, Inc. (In re Nedrow)*, 95 I.B.C.R. 198, 199 (Bankr. D. Idaho 1995). In the Code, the term "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property . . . [.]" § 101(54). The payment from Scheu to Defendant therefore constitutes a transfer for avoidance purposes.

Plaintiff's evidence demonstrates that the cashier's check was cashed by Lojek, Chtd. on November 29, 2004, five days after the filing of Scheu's bankruptcy petition. Because Plaintiff has presented a *prima facie* case that the transfer can be avoided under § 549(a), Defendant bears the burden of proving that the transfer was valid. Rule 6001 ("Any entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof."). *See also*, *In re Mora,* 199 F.3d at 1026; *In re HMH Motor Services, Inc.*, 259 B.R. 440, 448 (Bankr.

MEMORANDUM OF DECISION - 8

S.D. Ga. 2000); *In re American Way Service Corp.*, 229 B.R. 496, 525–26 (Bankr. S.D. Fla. 1999).

The Ninth Circuit Court of Appeals, in *In re Mora*, *supra*, decided a related question: "[D]oes a transfer of an interest in a cashier's check occur at the time the check is mailed, for purposes of avoiding postpetition transfers under section 549(a) of the United States Bankruptcy Code?" *Id.* at 1025. The *Mora* court's answer to the question was "no," holding that "placement in the United States mail system does not constitute 'delivery' of a cashier's check to the payee under section 549." *Id.* at 1028. Citing other cases, *Mora* established that "the transfer of a cashier's check for purposes of section 547(b) occurs at the time a cashier's check is 'delivered' rather than at the time the check is honored." *Id.* at 1027, (citing *In re Lee*, 179 B.R. 149, 161 (9th Cir. BAP 1995), *aff'd, Hall-Mark Elecs. Corp. v. Sims*, 108 F.3d 239 (9th Cir. 1997).

In *Lee*, the BAP determined that a cashier's check is transferred upon delivery to the payee, because it is at that point that the obligation to pay a cashier's check becomes fixed. *In re Lee*, 179 B.R. at 161.[10] The panel explained that "[a]lthough a purchaser cannot stop payment of the cashier's check, he or she

---

[10] Cashier's checks are treated differently than ordinary checks. For an ordinary check, the obligation to pay is fixed at the moment the check is honored by the payor's bank. *Id.* at 1027 (citing *Barnhill v. Johnson*, 103 U.S. 393, 394-95 (1992)).

MEMORANDUM OF DECISION - 9

could return the cashier's check or seek to have it cancelled as long as it is in his or her possession.  Therefore, until delivery, the purchaser's property rights in the cashier's check are not transferred to the payee/holder." *Id*. at 161-62.[11]

Under the controlling case law, it is the point in time when Scheu's cashier's check was delivered to Defendant that is crucial to the analysis in this action.   Plaintiff has shown by competent evidence that Defendant did not have physical possession of the cashier's check until after the bankruptcy petition was filed.  That evidence would be sufficient to render the transfer avoidable under § 549(a).  Therefore, Defendant had the burden to show that the check was delivered to his law firm prior to the filing of Scheu's petition.  Defendant failed to prove this is what occurred.[12]

---

[11]  In *Lee,* the BAP was construing the California Commercial Code.  However, the relevant provisions are identical to Idaho's version of the UCC.  Idaho Code § 28-1-201(15), (21).

[12]  The *Mora* court did not reach the question of whether the deposit of a letter containing a cashier's check in a recipient's post office box constitutes "delivery" for purposes of § 549(a).  The parties have not cited, and the Court has not located, cases analyzing this point.  However, the Court need not reach that question here.  On the one hand, the evidence shows Defendant first had physical possession of the check on November 29, 2004.  If "delivery" occurred when Defendant or his law firm first obtained possession of the check from the post office box, then based upon this evidence, the transfer took place post-petition.  On the other hand, if delivery occurred when the letter containing the check was placed into the post office box by the postal service, Defendant failed to prove the date and time when that occurred.

MEMORANDUM OF DECISION - 10

Scheu "express-mailed" the cashier's check to Defendant before noon on November 23, 2004. Scheu mailed his bankruptcy petition to the clerk in the same fashion on that same day, although later in the afternoon. The evidence presented confirms that the bankruptcy petition was filed by the clerk the following day, although the actual time of receipt is unclear. Nevertheless, the Court may not simply assume that the cashier's check also reached the Lojek, Chtd. post office box on the day following mailing.[13] Whether the letter containing the cashier's check actually reached the Lojek, Chtd. post office box the following morning is clearly an issue of fact requiring competent proof. Absent a return receipt, some form of date/time stamp indicating when the envelope was received in Boise and placed in the Lojek, Chtd. post office box, or other evidence or testimony by a competent witness, Defendant has failed to show that the check

---

[13] The Court could not, even if requested to do so, take judicial notice that "express" mail is delivered on the day following mailing. Fed. Rule Evid. 201(b) provides:
> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Although Scheu's bankruptcy petition reached its destination overnight, it cannot be said to be "generally known" that all items of overnight mail are delivered to the recipient the next day.

MEMORANDUM OF DECISION - 11

arrived prior to November 29, 2004, the day Defendant endorsed and negotiated it.[14]

In short, Defendant has not met his burden of proving the transfer occurred prior to the filing of Scheu's bankruptcy petition. Under § 549(a), the transfer is avoidable and Plaintiff may recover it from Defendant under § 550(a).[15]

## II.

Because the Court concludes that Defendant received an avoidable transfer, and assuming Defendant returns the transferred amounts to Plaintiff, the Court must next consider whether Defendant may seek reimbursement from Scheu or Hui. The Code does not permit such relief.

If Defendant returns the avoidable transfer to Plaintiff, Defendant may assert a claim in the bankruptcy case. The Code provides:

> A claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a),

---

[14] Even assuming the Court could find that the cashier's check reached the Lojek, Chtd. post office box on November 24, 2004, the day after it was mailed, Defendant must also prove that such occurred prior in time to the filing of Scheu's bankruptcy petition on that same day.

[15] There was a discussion both in the briefing and during trial about whether Defendant and Lojek, Chtd. are distinct legal entities. However, because Defendant has not met his burden to demonstrate that the transfer occurred pre-petition, and because he admits receiving and endorsing the check over to Lojek, Chtd., Defendant was the "initial transferee" and therefore liable for the avoidable transfer under § 550(a), and any distinction between the two entities is of no consequence here.

> (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

§ 502(h). While the Code recognizes a claim in favor of Defendant as against the *bankruptcy estate*, it does not authorize Defendant to assert a claim against Scheu, the debtor who paid Defendant, nor against Hui, the purchaser of the collateral for the debt. A recent BAP decision confirms this result. In *Busseto Foods, Inc. v. Laizure (In re Laizure)*, 349 B.R. 604 (9th Cir. BAP 2006), the BAP determined that a creditor which was forced to return an avoidable transfer to a trustee held no claim against the debtor as a result of the avoidance. *Id.* at 609. Instead, the transferee's rights are limited to a claim against the bankruptcy estate. *See also, In re Verco Industries*, 704 F.2d 1134, 1138 (9th Cir. 1983).

Finally, Defendant contends that Scheu and Hui engaged in some sort of scheme to defraud him. Intent to deceive or defraud is a question of fact which may be inferred from the surrounding circumstances of the case. *Farmers & Merchants State Bank v. Cracchiolo (In re Cracchiolo)*, 00.2 I.B.C.R. 84, 86 (Bankr. D. Idaho 2000). However, in this instance, the evidence demonstrates that Scheu intended in good faith to pay Defendant's debt prior to filing for bankruptcy. Hui agreed to buy the vehicle for a price that would not only pay Defendant's claim in full, but also provide Scheu funds to pay living expenses, as

MEMORANDUM OF DECISION - 13

well as the filing fee for his bankruptcy petition. Scheu merely acted on that opportunity. There was no persuasive evidence presented that in doing so, Scheu or Hui intended to harm Defendant, or that either knew that the payment to Defendant could later be recovered by the bankruptcy trustee.[16]

### *Conclusion*

Scheu's payment to Defendant is avoidable as a post-petition transfer under § 549(a), and pursuant to § 550(a), Plaintiff may recover the transfer from Defendant. Furthermore, Defendant has no cognizable claim under the Bankruptcy Code against either Scheu or Hui individually, but rather has a claim within Scheu's bankruptcy case. A separate judgment will be entered.

Dated: November 29, 2006

Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[16] The Court recognizes that this is perhaps a harsh result. Here, as an apparently over-secured creditor, Defendant accepted the payment from Scheu, and was obliged to release his security interest in the Jeep. As it now turns out, Defendant is relegated to the status of an unsecured creditor in Scheu's bankruptcy case, and has no recourse against either Scheu or the collateral. But as noted by the panel in *Laizure,* while Defendant may offer strong policy arguments in favor of reviving his claim against Scheu upon his repayment of the avoidable transfer, the Court is duty-bound to give the provisions of the Bankruptcy Code their plain meaning. 349 B.R. at 607. The Court is not at liberty to vary the outcome dictated by Congress even when it may result in inequity.

MEMORANDUM OF DECISION - 14